## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**FOUNDATION FOR ELDERCARE**,

        *Plaintiff,*

    v.

**MONEY ONE FEDERAL CREDIT UNION**,

        *Defendant.*

**Case No.  2:18-cv-05059-JDW**

### MEMORANDUM

This case illustrates the adage, "When you point a finger at someone, there are three more pointing back at you." Plaintiff Foundation For Eldercare and Defendant Money One Federal Credit Union entered into a loan agreement. The relationship unraveled. Each points at the other, but each of them bears some of the blame. Money One is at fault because it refused to release loan proceeds when it had a contractual obligation to do so. The Foundation is to blame because it did not provide Money One financial documents that Money One requested and that the parties' contract obligated the Foundation to provide. Each party has been blind to the fingers pointing back at it, and so they find themselves here, with cross-motions for summary judgment before this Court. The Court will grant the Foundation's partial motion because there is no dispute that Money One violated the contract. The Court will also grant part of Money One's motion because there is no dispute that the Foundation violated the contract.

I.      **BACKGROUND**

A.      **The Contract**

On June 20, 2017, the Foundation and Money One entered into a Commercial Loan Agreement and a Promissory Note. Under the terms of the Loan Agreement, the Foundation borrowed $900,000 on an interest-only loan from Money One "to payoff a $650,000 debt and make money available for development costs" to develop vacant land for housing in Elkton, Maryland (the "Property"). (ECF No. 36-4 at § 4.D.) The Promissory Note required Money One to make monthly interest payments and to pay all unpaid principal by June 20, 2020. (ECF No. 36-5 at § 6.)

After the Foundation paid the $650,000 debt, Money One held the remaining development funds in escrow. (ECF No. 36-4 at § 6.X.) It had to disburse those funds when the Foundation presented it with an invoice to pay. (*Id.*) However, Money One had the right to set aside and reserve loan proceeds for loan interest, fees, and expenses. The Loan Agreement provides that "[a]t [the Foundation's] request, [Money One] will disburse the reserves for the purpose they were set aside for, as long as [the Foundation] is not in default . . .." (*Id.* at § 6.V.)

In the Loan Agreement, the Foundation warranted that it owned the Property free and clear of any liens, security interests, or other encumbrances. (*Id.* § 4.E.) It agreed not to create or permit the creation of any liens or encumbrances on the property. (*Id.* §§ 6.M, 6.X.) The Foundation agreed to provide Money One with financial statements, tax returns,

and audit statements on an annual basis and to provide "any other information about [its] operations, financial affairs and condition with 30 days" of any request. (*Id.* §§ 5.B, 5.D.)

The Loan Agreement specifies several conditions of default. Relevant here, they include the failure to make a payment on the loan when it was due and the failure to provide financial information in a timely manner. (*Id.* §§ 7.A, 7.M.) In the event of a default, Money One could accelerate the payment of the loan. (*Id.* § 8.A.) It could also increase the interest rate. (ECF No. 36-5 at § 3.A.) The Loan Agreement elects Maryland law to govern it. (ECF No. 36-4 at § 10.)

### B.   The Dispute

On February 21, 2018, the Foundation submitted an invoice (the "Invoice") to Money One to pay McCrone Engineering $39,419.63. But there was a problem: there was only $29,657.33 remaining in the escrow fund. McCrone Engineering then split its invoice in two: one invoice for $29,000; and one for $10,419.63. The Foundation submitted the revised $29,000 invoice (the "Revised Invoice") to Money One on March 29, 2018. Money One refused to pay the Revised Invoice. The Foundation resubmitted the Revised Invoice on August 23, 2018, but Money One again refused to disburse the funds. The Court does not know if the Foundation ever paid McCrone Engineering, but there is no evidence before the Court that McCrone Engineering has asserted a lien on the Property or otherwise taken legal action against the Foundation.

On August 24, 2018 (the day after Money One rejected the resubmission of the Revised Invoice), the Foundation requested that Money One use the remaining reserve funds to pay the interest payments on the loan for August and September 2018. Money One refused. The Foundation never paid those interest payments.

On September 5, 2018, Patrick Connors of Money One sent a letter to John Berg of the Foundation (the "September 5 Letter"). In that letter, Mr. Connors explained that Money One deemed the loan to be "Impaired" because of a material adverse change in Foundation's financial condition. (ECF No. 36-11 at 3.) In his letter, Mr. Connors then asked Mr. Berg to "contact me by 12:00 pm on September 13, 2018 to discuss:

- The updated plan for the Property, including an updated budget for all cost necessary, and scope of work remaining to get the land to a state where construction can be started.

- The current financial condition of Borrower, with updated Financial Statements (interim August 2018), including Debt Schedules & Rent Rolls.

- Any outstanding invoices for the Property that remains unpaid.

- The funds in ESCROW.

(*Id.*) Mr. Connors told Mr. Berg that if "the above items are not provided by the 12:00 pm [sic] on September 13, 2018, the Lender will deem the Loan to be in default . . . ." (*Id.*)

On September 6, 2018, Mr. Berg emailed Mr. Connors information about outstanding invoices for the Property, including from McCrone Engineering, a rent roll, and an IRS form 990 for 2017. He explained that the Foundation did not have available

interim financial statements. (ECF No. 38-2, Ex. A at 3.) Money One responded by email asking for additional materials, including "[t]he updated plan for the property," a "Debt Schedule," and "[i]nterim 2018 Financial Statements." (*Id.* at 2.) Mr. Berg responded on September 17, 2018, and explained that the Foundation would "not provide data to which Money One is not entitled in the face of your declaration of default." (*Id.* at 1.)

On September 26, 2018, Mr. Connors sent Mr. Berg a letter explaining that Money One had not yet declared the loan to be in default. He also noted that the Foundation had not made August or September interest payments. He asked the Foundation to cure that failure and to provide the documents that he requested in his email dated September 13, 2018. (ECF No. 36-12.) There is no evidence that the Foundation responded. On October 18, 2018, Money One sent the Foundation a letter, declaring the loan to be in default. (ECF No. 36-13.)

### C.    Procedural History

The Foundation filed this action on November 21, 2018. The Complaint has three counts: breach of the Loan Agreement (Count I); a request for a declaratory judgment that Money One's declaration of default was invalid (Count II); and breach of the covenant of good faith and fair dealing (Count III). Following discovery, the Foundation moved for partial summary judgment on Count I. (ECF No. 37.) Money One moved for summary judgment on all three counts. (ECF No. 36.) Those motions are ripe for decision.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) permits a party to seek, and a court to enter, summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he plain language of Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quotations omitted). In ruling on a summary judgment motion, a court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quotations omitted). However, "[t]he non-moving party may not merely deny the allegations in the moving party's pleadings; instead he must show where in the record there exists a genuine dispute over a material fact." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citation omitted).

The filing of cross-motions does not change this analysis. *See Transportes Ferreos de Venezuela II CA v. NKK Corp.*, 239 F.3d 555, 560 (3d Cir. 2001). It "does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist." *Id.* at 560 (citation omitted). Rather, "[w]hen confronted with cross-motions for

summary judgment 'the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard.'" *Canal Ins. Co. v. Underwriters at Lloyd's London*, 333 F. Supp. 2d 352, 353 n.1 (E.D. Pa. 2004), aff'd, 435 F.3d 431 (3d Cir. 2006).

## III.   DISCUSSION

### A.   Choice Of Law

The Loan Agreement includes a Maryland choice-of-law provision. Pennsylvania courts apply parties' choice of law provisions, unless either (a) the chosen state has no substantial relationship to the parties or their transaction or (b) the application of the law of the chosen forum would be contrary to a fundamental policy of a state with a greater interest. *See Gay v. CreditInform*, 511 F.3d 369, 389-90 (3d Cir. 2007). Because the Property is in Maryland, there is a relationship between that State and the Loan Agreement, so the Court will enforce the choice-of-law provision and apply Maryland law.

### B.   Breach Of Contract

Under Maryland law, a breach of contract claim only requires proof that the defendant breached a contractual obligation that it owed the plaintiff. *See RRC Ne., LLC v. BAA Maryland, Inc.*, 994 A.2d 430, 442 (Md. 2010); *Taylor v. NationsBank, N.A.*, 776 A.2d 645, 651 (Md. 2001). It is "not necessary that the plaintiff prove damages resulting from the breach, for it is well settled that where a breach of contract occurs, one may recover

nominal damages even though he has failed to prove actual damages." *Taylor*, 776 A.3d at 651.

A court must interpret a contract to give effect to the parties' intentions at the time the contract was made. Usually, the words of the contract reveal these intentions. *See Ocean Petroleum Co. v. Yanek*, 5 A.3d 683, 690 (Md. 2010) (absent ambiguity, court gives effect to language as written without concern for parties' subjective intent). The court gives the words their ordinary meaning unless that meaning leads to an unreasonable result. The test for the meaning of an unambiguous contract is what a reasonable person in the position of the parties would have thought the contract meant. *See, e.g.*, *Cochran v. Norkunas*, 919 A.2d 700, 710 (Md. 2007) (ambiguity arises if, to a reasonable person, the language used is susceptible of more than one meaning or is of doubtful meaning). Each sentence of the contract should be interpreted in view of the other sentences of the contract. *See id.* Unless there is ambiguity or other facts contradicting or equivocating the language of a contract, the interpretation of contract language is a question of law for the Court. *See id.*

## 1.   Failure to release loan proceeds to pay the Invoice and Revised Invoice

The Loan Agreement provided that Money One would hold the loan proceeds in escrow and that the Foundation could only draw down those funds "after presenting an invoice." (ECF No. 36-4 at § 6.X.) When the Foundation submitted the Invoice and the Revised Invoice, it fulfilled its obligation under the Loan Agreement in order to draw

down the loan funds. Nothing in the Loan Agreement gave Money One the right to refuse to pay the remaining funds when it received those invoices. While it had no obligation to pay more than the remaining funds, it had to pay what was left in the account to McCrone Engineering, as the Foundation instructed. When it refused, it breached the Loan Agreement.

Money One argues that it did not have to pay the Invoice or the Revised Invoice because the remaining money would not have satisfied the Invoice. That argument fails for two reasons. First, nothing in the Loan Agreement requires that a requested disbursement satisfy an invoice in full. The Foundation was free to request Money One disburse all remaining money to pay down the Invoice, and it was then left to its own devices to satisfy its obligation to McCrone Engineering. Second, Money One had no basis to reject the Revised Invoice. Money One determined that it was for the same work as the original invoice. But Money One did not know whether the Foundation prevailed upon McCrone Engineering to write down the invoice or whether the remainder was still outstanding. When Money One received the Revised Invoice, for an amount remaining in the loan account, it had to pay it.

The structure of the loan under the Loan Agreement reinforces this conclusion. Money One advanced the full amount of the Loan to the Foundation in one payment at the outset of the loan. (ECF No. 36-4 at § 2.) The Foundation's obligation to pay interest on the full amount of the loan began then. Money One held the remaining loan proceeds

in escrow. (*Id.* at § 6.X.) Thus, when the Foundation presented the Invoice, it was asking Money One to release its money, not Money One's money. Money One just happened to be the escrow agent holding money it had already loaned to the Foundation.

Money One also argues that it did not have to pay either invoice because McCrone Engineering might have asserted a mechanics lien against the Property. But the Loan Agreement does not give Money One the right to withhold payment on that basis. In the Loan Agreement, the Foundation represented that the Property was not subject to any liens." (*Id.* at § 4.E.) It then covenanted not to "create, permit or suffer any lien or encumbrance" of the Property. (*Id.* at §§ 6.M, 6.X.) Under these provisions, the Foundation might have breached the Loan Agreement if it permitted McCrone Engineering or anyone else to place a lien on the Property. But there were many ways for the Foundation to prevent McCrone Engineering from placing a lien on the Property. It could have asked for forbearance, based on a relationship or the promise of future payment. It could have paid the remainder of the invoice itself. Or it could have obtained an agreement that, in exchange for partial payment, McCrone Engineering would hold off on asserting a lien. Regardless of the method, the Foundation would have remained in compliance with the Loan Agreement if it found a way to keep McCrone Engineering from asserting a lien. Money One had to give the Foundation that chance.

### 2.     Failure to release loan proceeds for interest payments

Money One also breached the Loan Agreement when it refused to release the loan proceeds to pay loan interest proceeds for August and September 2018. The Foundation requested Money One release payments for that purpose on August 24, 2018, and Money One refused. But Section 6.V. of the Loan Agreement authorized the Foundation to give Money One such an instruction and obligated Money One to follow it unless the Foundation was in default under the Agreement. At that point, Money One had not declared the Foundation to be in default, so it had to release the funds.

Money One argues that the Loan Agreement did not require it to disburse the funds to pay interest, but that misreads the Agreement. The Agreement says that Money One "may set aside and reserve Loan proceeds for Loan Interest, fees and expenses, taxes, and Insurance." (*Id.* at § 6.V.) Money One did so on August 23, 2018. (ECF No. 37-1 at Ex. G.) If Money One set loan proceeds aside as reserves, then as long as the Foundation was not in default and requested that Money One do so, Money One had to "disburse the reserves for the purpose they were set aside for." (ECF No. 36-4 at § 6.V.) Money One made that request on August 24, 2018. The Agreement says that, upon receiving that request, Money One "will" make the required disbursement. That language does not give Money One the discretion it claims. It made the disbursement mandatory. Money One breached that obligation when it did not disburse the funds.

**C.      Declaratory Judgment**

The Declaratory Judgment Act authorizes courts to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. 28 U.S.C. § 2201. An action for a declaratory judgment is procedural in nature and purpose, so the federal act applies. *See Federal Kemper Ins. Co. v. Rauscher*, 807 F.2d 345, 352 (3d Cir. 1986). Both parties cite the Maryland Declaratory Judgment Act in their briefs, but that statute does not apply in federal court.

Genuine factual disputes preclude summary judgment as to whether the Foundation defaulted by failing to make interest payments in August and September 2018 as one basis for its declaration of default. When Money One refused to apply the remaining loan proceeds to the outstanding interest payments, it breached the Loan Agreement. It also prevented the Foundation from making those interest payments. Under Maryland law, "if one party to a contract hinders, prevents or makes impossible performance by the other party, the latter's failure to perform will be excused." *WSC/2005 LLC v. Trio Ventures Assocs.*, 190 A.3d 255, 268 (Md. 2018). It is therefore possible that the Foundation's performance is excused. That, in turn, would make a declaration of default on the basis of non-payment improper. Because the Court cannot resolve that issue as a matter of law, it cannot grant summary judgment as to that aspect of the declaration of default.

But there is no dispute that the Foundation defaulted by failing to provide Money One with requested financial records. The Loan Agreement required the Foundation to provide Money One with "any other information about [its] operations, financial affairs and conditions within 30 days" after Money One requested that information. (ECF No. 36-4 at § 5.D.) A "failure to provide financial information in a timely manner can be a default." (*Id.* at § 7.M.) Money One declared the Foundation to be in default on October 18, 2018. The Foundation's failure to provide financial documents could only support that declaration if Money One requested them at least 30 days earlier, by September 18, 2020. The September 5 Letter might have requested documents, but it is unclear. It asks the Foundation to "contact" Money One, which suggests a call, not the submission of documents, but it also threatens default if "items are not provided." (ECF No. 36-11 at 3.)

Mr. Connors' email on September 17, 2018, cleared up any ambiguity. He requests documents, including an updated plan for the property, a debt schedule, and interim financial statements. The Foundation said it did not have the financial statements, so maybe that request was unreasonable. But nothing in the record suggests that the Foundation could not provide the updated plan and budget for the property or the requested debt schedule. It didn't, though. And 31 days later, on October 18, 2018, Money One declared the Foundation in default. The Loan Agreement gave Money One the right to do that.

In its Opposition, the Foundation notes that, in the September 5 Letter, Money One "threatened to declare the loan to be in default if the Foundation failed to provide specific financial statements that could not reasonably be produced in such a short period of time, only eight days after demanding the financial statements rather than the third days required by the Loan Agreement." (ECF No. 38 at 11.) But Money One did not declare the loan in default after eight days. Instead, it followed up and again asked for documents on September 17, and then it waited 30 more days to declare a default. The fact that Money One made an aggressive threat in the September 5 Letter does not excuse the Foundation's default. The Foundation does not point to any other factual dispute that might excuse its default. Because Money One had the right to declare a default under the Loan Agreement on October 18, 2018, the Court will grant Money One's summary judgment motion on the declaratory judgment claim.

### D. Breach Of Good Faith And Fair Dealing

Maryland law recognizes that every contract imposes a duty of good faith and fair dealing in its performance. *See Food Fair Stores, Inc. v. Blumberg*, 200 A.2d 166, 174 (Md. 1964). The implied duty "prohibits one party to a contract from acting in such a manner as to prevent the other party from performing his obligations under the contract." *Parker v. Columbia Bank*, 604 A.2d 521, 531 (Md. 1992). But the duty "does not obligate a [party] to take affirmative actions that the [party] is clearly not required to take under [the

contract]." *E. Shore Mkts., Inc. v. J.D. Associates, Ltd.*, 213 F.3d 175, 182-84 (4th Cir. 2000) (citing *Parker*, 604 A.2d at 531).

Maryland does not recognize an independent cause of action for breach of the duty of good faith and fair dealing. *See Titan Custom Cabinets, Inc. v. Truist* Bank, -- F. Supp.3d --, 2020 WL 7230589, at * 5 (D. Md. Dec. 8, 2020); *Swedish Civil Aviation Admin. v. Project Mgmt. Enterprises, Inc.*, 190 F. Supp.2d 785, 794 (D. Md. 2002). Instead, a breach of the duty of good faith and fair dealing is "better viewed as an element of another cause of action at law, *e.g.*, breach of contract, than as a stand-alone cause of action." *Myers v. McNamee, Hosea, Jernigan, Kim, Greenan, & Lynch, P.A.*, Civ. A. No. 8:18-cv-3460-PX, 2020 WL 758151, at *10 (D. Md. Feb. 14, 2020) (quoting *Gurbani v. Johns Hopkins Health Sys. Corp.*, 237 Md. App. 261, 306, 185 A.3d 760 (2018)). Given Maryland law, the Foundation's breach-of-contract claim subsumes the Foundation's claims about Money One's performance under the Loan Agreement. As a matter of law, the Foundation cannot maintain a separate claim for breach of the duty of good faith and fair dealing.

## IV.   CONCLUSION

Both parties are somewhat to blame for the position in which they find themselves. Money One breached its obligations when it declined to release remaining loan funds to the Foundation. The Foundation breached its obligations when it refused to provide Money One with financial documents that Money One requested. Subsequent

proceedings will sort out what, if any, damages either party suffered. For now, the Court will grant the Foundation's partial summary judgment motion, and it will grant Money One's motion in part. An appropriate Order follows.

BY THE COURT:

_/s/ Joshua D. Wolson_
Hon. Joshua D. Wolson
United States District Judge

December 23, 2020